Adolph Schneider, Administrator, Defendant in Error, v. Chicago Terminal Transfer Railroad Company, Plaintiff in Error.

### Gen. No. 14,425.

1. TRESPASSERS—*who upon railroad tracks not.* Persons upon railroad tracks at a point which was a thoroughfare in general use by the public are not trespassers where it appears not only that the company made no effort either to restrict such use to any particular person or classes of people but that it invited persons to pass over the same.

2. NEGLIGENCE—*when railroad company owes duty to persons upon its tracks.* A railroad company owes a duty of care towards those upon its tracks either at its invitation or allurement. *Held,* under the evidence in this case, the verdict of the jury finding that there was a failure to exercise such care by the company was justified by the evidence.

Action in case for death caused by alleged wrongful act. Error to Circuit Court of Cook county; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909. Affirmed. Opinion filed July 9, 1909. Rehearing denied October 5, 1909.

**Statement by the Court.**    This writ of error is prosecuted to reverse a judgment of the Circuit Court in favor of the administrator of Adolph Schneider, Jr., deceased, and against the Chicago Terminal Transfer Railroad Company, plaintiff in error, for $2500.

It appears from the record that Ewing avenue near Ninety-fourth street in the city of Chicago runs in a northwesterly and southeasterly direction. Ninety-fourth street is not opened west of Ewing avenue. The railroad tracks of the plaintiff in error are west of Ewing avenue near Ninety-fourth street. The tracks run on a curve from the northwest toward Ewing avenue until they reach a point about 250 feet north of Ninety-fourth street, where the tracks are about forty or fifty feet west of Ewing avenue. From this point the railroad tracks continue on a curve in a southerly direction.

About 200 feet north of Ninety-fourth street a private driveway, leading from Ewing avenue west across the railway tracks to the Hibben & Co. boiler works and the Riverside iron works on the west side of the railroad tracks, had existed about seventeen years. This driveway where it crosses the railroad tracks is planked about twelve feet wide for teams to cross to deliver materials to the boiler works and the machine shop adjoining. Still further west is a vacant place where the boys played ball, and also a coal yard on the river. Many people and teams daily crossed the railroad tracks over this driveway and no attempt seems to have been made to stop them.

The deceased was five years old at the time of his death. His mother left him at home in the charge and care of his grandmother, then sixty-five years of age, about fifteen or twenty minutes before the accident, and the father was at the time working out on Lake Michigan. The mother left home to obtain some wood; but did not caution the child about leaving home before she went away.

The deceased was seen just before the accident on the west side of the railroad tracks running east on the driveway towards his home. Before the accident three cars were standing on the railroad tracks between the crossing in question and Ninety-fourth street. A locomotive was attached to a number of other cars and, without warning of any kind, pushed the cars attached to it against the three cars above mentioned, in order to couple on to them, and in doing so moved the three cars several feet. The car next to the crossing struck the deceased and he was found pinned down by the car wheel from a foot to two feet from the south end of the planking.

An action was brought by the administrator against plaintiff in error for negligence in causing the death. On the trial, at the close of plaintiff's evidence, the defendant submitted a motion in writing for a peremptory instruction for the defendant. This motion was denied, and the case was submitted to the jury on the plaintiff's evidence, the defendant offering no evidence. The jury returned a verdict for the plaintiff for $2500. After overruling a motion for a new trial, and a motion in arrest of judgment, the court entered judgment on the verdict.

JESSIE B. BARTON, for plaintiff in error.

MASON & MASON, for defendant in error.

MR. JUSTICE SMITH delivered the opinion of the court.

The main contention of plaintiff in error is that the decedent was a trespasser, or at most a licensee, and under the declaration, which did not aver wantonness or wilfulness in injuring him, there could be no recovery. In support of this proposition the following cases are cited: Wabash R. R. Co. v. Jones, 163 Ill. 167; I. C. R. R. Co. v. Eicher, 202 id. 556; Bartlett v. Wabash, R. R. Co., 220 id. 163; Thompson v. C. C. C. & St. L.

Ry. Co., 226 *id.* 542, and certain Appellate Court decisions. In these cases it was held that, "A railroad company owes no duty to a person walking along its tracks without its invitation, either expressed or implied, except to refrain from wantonly or wilfully injuring him, and to use reasonable care to avoid injury to him after he is discovered to be in peril; and it makes no difference in that respect whether he is a trespasser, a mere licensee or one who is on the tracks by mere sufferance, without objection of the company."

The facts of this case, however, differ very materially from the facts in the cases cited; and in our opinion they raised a duty on the part of plaintiff in error toward the decedent in the operation of its railroad at the crossing in question quite different from that which a railroad company owes to a person walking along its tracks without its invitation, either expressed or implied.

The evidence in this record shows that the crossing in question was used as a driveway for those doing business with the manufacturing plants west of the railroad. The employes of those industries and the Great Lakes Dredging Company and the local public generally in that neighborhood used the crossing as a foot passageway from Ewing avenue on the east of the railroad across the railroad tracks to the plants mentioned. At certain seasons of the year, also, boys and young men crossed at this place to reach a ball ground west of the railroad tracks. Altogether it appears that large numbers of people used this crossing daily. As one witness states it, "I have seen thousands of people besides teams and wagons cross there." From the undisputed testimony we think the jury was warranted in reaching the conclusion that it was a thoroughfare of general use by the public, and that not only no effort to restrict its use to any particular persons or classes of people was made by the plaintiff in error, but that it invited persons to pass over its property. The evidence shows that it had been so used for sixteen or

seventeen years; that it was not a casual or occasional passageway, but that it was a prepared crossing, planked for a wagon way, and that it was used by teams and people on foot at the same time, those on foot walking at the sides of the planked driveway.

The decedent had been playing with other boys west of the railroad tracks, and was seen just before the accident running toward his home in the direction of the planking across the railroad tracks. As he approached the crossing, there were some unattached cars standing just south of the crossing. The train of plaintiff in error at this moment approached the crossing around a curve and without any notice by bell, whistle, gates, flagman or switchman, and with the locomotive some twelve or fourteen car lengths away and on a curve, bumped against the standing cars for the purpose of making a coupling, and knocked the boy down and killed him.

"The books draw a distinction between cases where there is a mere naked license or permission to enter upon or pass over an estate, and cases where the owner or occupant holds out any enticement, allurement or inducement to persons to enter upon or pass over his property." L. S. & M. S. Ry. Co. v. Bodemer, 139 Ill. 596; Sweeney v. Old Colony & N. R. R. Co., 10 Allen, 368.

We think that under the circumstances disclosed by the evidence the jury were warranted in finding that by the planking placed on its right of way, and by the unrestricted use of the crossing by the public which the plaintiff in error permitted, it directly or by implication induced persons to enter on and pass over its tracks at this crossing. This was a question for the jury, and if the plaintiff in error did so invite or induce persons to enter on and pass over its right of way, it thereby assumed an obligation that its premises were in a safe condition suitable for such use, and for a breach of this obligation it is liable in damages. A dangerous place at this crossing was thereby created,

which was well known to plaintiff in error's servants, and it existed at the time of the accident. As said in C. & A. R. R. Co. v. Dillon, 123 Ill. 570, at page 579: "Without regard to the statute, it is the duty of those having charge of trains to give notice of their approach at all points of known or reasonably apprehended danger. This is almost universally done by the ringing of a bell or sounding of the whistle, and frequently both. In exceptional cases, where the highest degree of care is deemed advisable, flagging is resorted to."

In C. & A. R. R. Co. v. Sanders, 55 Ill. App. 87, the action was for personal injuries caused by a train at a private farm crossing. The court said at page 92: "This crossing had been long established and the track so cut the farm as to make its use necessarily frequent. Appellant therefore had notice that it might be in use at any time of a working day, especially as against a wild train. From the fact that the statute did not expressly require it to whistle or ring for a private crossing as it did for a public highway, it would not follow that the circumstances of a particular occasion might not. Notwithstanding the statute, reasonable notice of the approach of a train should be given at all points of known or reasonably apprehended danger, and the means by which it is usually given are the bell, the whistle or the flagman."

In our opinion the circumstances in this case were sufficient to make it a fair question for the jury whether the servants of plaintiff in error in charge of the train did or did not fail to use such care on their part as the law required of them to avoid the injury inflicted upon decedent, causing his death. The evidence tended to show that no notice of any kind was given by them, and no measures were adopted to avoid the injury. The motion to instruct the jury to find for the plaintiff in error was therefore properly denied.

It is suggested rather than argued on behalf of plaintiff in error that the negligence of the parents of the decedent contributed directly to produce the injury,

and that therefore there can be no recovery. On the evidence in this record the verdict of the jury must be regarded as final upon that question.

In our opinion the original declaration stated a cause of action, though imperfectly. The amendments do not state a different cause of action. The abstract of record shows no action or ruling of the court on the plea of Statutes of Limitation. No question on the plea is before us.

Finding no error in the record, the judgment of the Circuit Court is affirmed.

*Affirmed.*

Mr. Justice Mack took no part in the consideration of this case.